# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| KENNETH DARNELL SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CIVIL ACTION NO. |
| THE GEO GROUP, INC., | ) _____ |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Kenneth D. Smith and hereby files his Complaint against Defendant as follows:

## INTRODUCTION

1.

This is a medical negligence action brought under Georgia law in which federal jurisdiction is based solely upon diversity of citizenship.

## JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction under 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the minimum jurisdictional limit of $75,000.

1

3.

Venue is proper in this Court pursuant to 28 U.S.C. §1391 and other applicable law because the cause of action arose in Baldwin County, Georgia, which is situated within the district and divisional boundaries of the Macon Division of the Middle District of Georgia.

4.

The parties are subject to the personal jurisdiction of this Court.

**PARTIES**

5.

Plaintiff Kenneth Darnell Smith (hereafter "Plaintiff" or "Smith") is a citizen of the United States who is domiciled in the state of California.

6.

Defendant GEO Group, Inc. (hereafter "Defendant" or "GEO") is a Florida for-profit corporation having its principal place of business in Florida that is licensed to do business in Georgia. Defendant may be served through its Georgia Registered Agent, Corporate Creations Network, Inc., at 2985 Gordy Parkway, First Floor, Marietta, Georgia 30066.

7.

At all times relevant herein, Defendant GEO has operated Riverbend

Correctional Facility in Milledgeville, Georgia and has employed doctors, nurses and other medical providers to service the medical needs of the inmates at that institution. For purposes of this lawsuit, said doctors, nurses and providers are considered agents or employees of GEO who acted within the scope of their agency or employment at all times relevant herein in order to avoid the inconvenience and imposition of naming all such individuals as defendants.

## FACTS

8.

Paragraphs 1 thru 7 are incorporated by reference as if fully alleged herein.

9.

Plaintiff Kenneth Smith entered the custody of the Georgia prison system in September 2014. An intake history and physical was completed on September 10, 2014. His past medical history included a history of chronic low back pain, hyperlipidemia and hypertension. He was transferred to Riverbend Correctional Facility in January 2015, where he came under the care of GEO's Riverbend medical staff.

10.

At Riverbend, Smith was seen by a physician's assistant on March 10, 2015 after a sick call request, at which time he complained of bilateral leg numbness.

He was examined but the extent of the exam is unclear. A physician referral was made and occurred on March 16, 2015 when he was seen by Dr. Ekwunife. Dr. Ekwunife documented Smith's complaint of worsening radiculopathy pain. Dr. Ekwunife also found positive straight leg raising in both legs but did not test strength or evaluate the gait. Positive straight leg raising was an indication of pressure on his nerves pressure and in conjunction with worse pain suggested disease progression. No imaging or diagnostic studies were ordered. Despite evidence of possible disease progression the section about patient education was blank. An order for follow-up in five weeks was written.

11.

He submitted another sick call request complaining about "severe back pain" and also reporting vision problems, dated April 13, 2015. Nurse Harrison processed the form the next day and wrote for an urgent sick call. He saw Dr. Ekwunife again on April 28, 2015. Despite complaints of worsening back pain, there is no indication that Smith's back was examined. A lumber spine x-ray was ordered.

12.

Smith saw Dr. Ekwunife again on May 20, 2015. The space on the form to record his symptoms is blank and it does not appear that he was asked. According

to the note, his gait was normal, he exhibited normal flexion and straight leg raising was normal on both sides.

13.

On June 15, 2015, Smith submitted another sick call request. On the form he wrote, "URGENT Loss of power and function on the right side of my body." The following day, he was seen by a facility nurse who wrote that Smith was reporting that he was unable to grip with his right hand as well as weakness in his right leg. On exam, weakness of the right hand was found as well as an abnormal gait. It does not appear that the physician was notified.

14.

Smith saw Dr. Ekwunife on June 22, 2015 who recorded a history of neck pain that started two weeks prior with pain radiating into his right arm. Prior history of neck injury in 2008 was also noted. A diagnosis of possible cervical radiculopathy was made and an x-ray of the cervical spine was ordered.

15.

He was seen the next day by Dr. Mbanefo who documented weakness of three fingers on Smith's right hand that he also attributed to possible cervical radiculopathy. Ibuprofen was ordered as well as a return visit in three weeks.

16.

Smith received counseling about missed doses of medication on June 26, 2015. When he was interviewed, he reported that he was having difficulty standing that caused him to miss pill call. He was issued a cane.

17.

Another sick call request was submitted on June 29, 2015. Smith advised that the right side of his body was stiffening and that he was having difficulty walking. He was seen the following day by a facility nurse who recorded a history of right-sided weakness and numbness in the left hand. Weakness in his right hand was found on exam and his difficulty walking was judged to be severe enough to warrant issuing him a wheelchair. The cervical spine x-ray was also obtained on June 30, 2015.

18.

He was seen by Dr. Mbanefo on July 2, 2015. Smith was reporting left finger numbness and right side weakness. Mbanefo referenced the cervical spine x-ray that showed degenerative disk disease of the spaces between C5 and C6 and C6 and C7. Despite the prior imaging report and symptoms consistent with cervical disk compression, no diagnostic tests were ordered and no specific follow-up plan was made. A neurology consult was requested, but despite documented

muscle weakness, the consult request was marked as routine.

19.

On July 7, 2015, Smith filled out another sick call request form. On the form, he wrote that his that his left hand had lost feeling. Other problems that he listed were that his body spasms were increasing and that his legs were weakening. He requested to see the doctor. That afternoon, a facility nurse saw him. Smith reported to the nurse that he was unable to move his left leg unless he picked it up.

20.

The following day, he saw Dr. Mbanefo who documented weakness in Smith's right hand and left leg. The chart entry notes that Smith was using a wheelchair and was unable to stand. A diagnosis of cervical radiculopathy was made. The note indicates a plan to transfer Smith but no imaging or diagnostic studies were requested and no new orders were written. It does not appear that Dr. Mbanefo consulted with any specialist.

21.

By July 15, 2015 Smith had not been seen by the neurologist and it is unclear what effort had been made to arrange an appointment. An entry in the medical records was made by the Director of Nursing, Tina Clark, on July 15, 2015 that the neurologist was due to leave on vacation for several weeks and that the

next available appointment was not until August 26, 2015. She wrote that no appointments were available that day. Her note did not indicate whether this information was communicated to Dr. Mbanefo or that any alternative plan was made.

22.

By July 20, 2015, Smith still had not had the neurology consult that had been ordered on July 2, 2015. Nor had any further imaging been obtained. Transfer paperwork was completed to transfer him to Autry State Prison, a prison operated by the State of Georgia. The transfer form indicates that a neurology consult was pending.

23.

Smith arrived at Autry State Prison on July 21, 2015. He was seen by a facility physician who noted that despite the right-sided weakness, and x-rays suggesting degenerative disk disease of the cervical spine, no CT or MRI had been done. An urgent request for an MRI was completed on the same day.

24.

He was seen on July 24, 2015 by another doctor at Autry, who documented a history of progressive right-sided weakness over the prior two months following an injury that occurred while lifting. On exam, Smith demonstrated weakness in the

right arm.  Concerned about a possible mass lesion or sub-acute stroke, that doctor ordered that Smith be transferred to a hospital to obtain diagnostic imaging.

25.

At the hospital an MRI was obtained that showed a large herniated disk at the C4-5 level that was causing cord compression with signal change in the spinal cord consistent with edema or myelomalacia.  The clinical information provided for the cervical MRI indicates that the arm and leg weakness had been present for five months.  Lumbar MRI showed multilevel lumbar stenosis as well as severe foraminal narrowing at L4-L5 and also L5-S1.  The foraminal narrowing was severe on both sides at L5-S1.  The foramen are openings on each side of the spine where the nerve roots exit.

26.

A neurosurgeon was brought into the case.  The neurosurgeon found that Smith had bilateral arm weakness and his leg was completely unable to extend is leg below the knee.  Urgent cervical discectomy with fusion was completed on July 25, 2015 – four days after his arrival at Autry.  The neurosurgeon wrote that he told Smith that he not get movement back in his right foot since two to three months had passed since he last had foot movement.  After surgery, he began to move his right leg and had improvement in the use of his hands.

27.

Smith was discharged from the hospital on July 27, 2015 and was admitted to Augusta State Medical Prison (ASMP). Physical therapy and occupational therapy was provided. Despite his treatment, Smith continues to experience weakness and is still undergoing follow-up treatment by a neurosurgeon. Nearly a year after his surgery, he still has significant deficits and is left with what is more likely than not a permanent disability.

## LIABILITY

28.

Paragraphs 1 thru 27 are incorporated by reference as if fully alleged herein.

29.

The aforementioned care and treatment provided to Mr. Smith by the GEO medical staff at Riverbend between March 10, 2015 and July 21, 2015 fell below the standard of care applicable to the medical profession generally, including but not limited to the standard of care applicable to physicians, nurses, and other primary care providers in a correctional setting, under the circumstances and conditions then existing.

30.

Specifically, Defendant's deviations from the applicable standard of care

include, but were not limited to, the following:

a. The failure of Defendant's medical staff, including but not limited to Dr. Ekwunife, Dr. Mbanefo, and Nurse Tina Clark, to recognize that Mr. Smith's condition warranted urgent imaging and neurosurgical consultation;

b. The failure of Defendant and its medical staff to urgently obtain advanced imaging studies and neurosurgical consultation promptly after confirmation of muscle weakness;

c. The failure of Dr. Mbanefo to urgently obtain advanced imaging studies and neurosurgical consultation promptly after becoming aware of probable spinal cord compression on July 2, 2105 – instead, Mbanefo requested a routine neurology consult and no further imaging or diagnostic tests;

d. The failure of Dr. Mbanefo to hospitalize Mr. Smith on July 8, 2015 in response to worsening symptoms – instead, Mbanefo requested that Smith be transferred to another prison;

e. The failure of Nurse Tina Clark to make alternative arrangements for urgent intervention when she learned on July 15, 2015 that the facility could not obtain an appointment with the neurologist that she had called until late August; and

    f. Defendant's decision to transfer Smith to another prison instead of the hospital.

31.

Attached hereto as Exhibit 1 and incorporated herein is the expert affidavit of Dr. Lawrence Mendel, which sets forth one or more deviations from the standard care by Defendant and its medical staff. While such an affidavit is not a required pleading in federal court, it complies with the state pleading requirements of O.C.G.A. §9-11-9.1 and is offered here as a Rule 26 expert disclosure.

32.

As evidenced by his affidavit and curriculum vitae attached thereto, Dr. Mendel satisfies the competency requirements for an expert to testify in a medical malpractice action under O.C.G.A. §24-9-67.1, to the extent that it is applicable to actions in this Court, and his affidavit complies with the expert disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure.

33.

The aforementioned deviations and violations of the applicable standard of care by the aforementioned medical providers constitute professional negligence and medical malpractice for which said Defendants are liable.

34.

The aforementioned professional negligence and malpractice of the aforementioned medical providers at Riverbend Correctional Facility was committed by agents or employees of GEO within the scope of their agency or employment, including but not limited to Dr. Ekwunife, Dr. Mbanefo, and Nurse Tina Clark, such that Defendant is vicariously liable for said professional negligence and malpractice under the doctrine of *respondeat superior*.

35.

In addition to being vicariously liable for the negligent acts and omissions of its agents and employees, GEO is directly liable for its own negligent and tortious misconduct with respective to corporate decisions relating to withholding treatment from Mr. Smith, refusing to fund treatment required by the standard of care, and arranging his transfer in order to avoid financial responsibility for such treatment.

36.

The aforementioned deviations from the standard of care proximately caused Smith to suffer significant and permanent injury by delaying medically necessary treatment which caused deterioration of his condition and subjected him to pain and suffering that would not have otherwise occurred, and resulted in a worse

outcome than would have occurred had he been treated in accordance with the standard of care.

## DAMAGES

37.

Paragraphs 1 thru 36 are incorporated by reference as if fully alleged herein.

38.

As a direct and proximate result of the aforementioned negligent and tortious misconduct of the Defendant GEO and its medical staff, Plaintiff Kenneth Smith has suffered permanent disability and endured extreme physical, mental, and emotional pain and suffering that is expected to continue for the remainder of his life, has incurred significant expenses for medical treatment that is expected to continue into the future, for which Plaintiff is entitled to recover compensatory damages from Defendant in an amount to be proven at trial and determined by the enlightened conscience of a fair and impartial jury.

39.

The aforementioned acts and omissions of Defendant and its agents or employees rose to such a level of willful misconduct and reckless disregard for the consequences as to authorize the imposition of punitive damages in an amount to be determined by the jury.

40.

Because Defendant acted in bad faith in the underlying events giving rise to this lawsuit, Plaintiff is entitled to expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. §13-6-11 in an amount to be proven at trial.

WHEREFORE Plaintiff demands as follows:

a)  That this action be tried by a jury;

b)  That judgment be entered in favor of Plaintiff and against Defendant in an amount to be determined by the enlightened conscience of fair and impartial jurors for compensatory damages, punitive damages, and expenses of litigation as pled herein;

c)  That all costs of this action be taxed against Defendant; and

e)  That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 20th day of May, 2016.

> */s/ Craig T. Jones*
> CRAIG T. JONES
> GA Bar No. 399476
> Attorney for Plaintiff

THE ORLANDO FIRM, P.C.
Decatur Court, Suite 400
315 West Ponce de Leon Ave.
Decatur, Georgia 30030
(404) 373-1800
craig@orlandofirm.com